Our next case for argument is the United States v. Devin Weaver, Appeal No. 23-2856. Ms. Krause, good morning. Good morning. I wish I had the confidence of the last attorney who walked up and- Just one sheet of paper. One sheet of paper, I wish. Good morning. I am Michelle Krause. I work for the Federal Community Defenders in the Northern District of Indiana, and I represent Mr. Devin Weaver. I was trial counsel. Mr. Pennington wrote the brief and has decided to go back to Southern California. So, on behalf of Mr. Weaver, we would ask that you would vacate the 144-month sentence that was imposed and remand it for a new sentencing hearing. Our argument is that the trial court, the district court, failed to adequately justify the above-guideline range, and it is a big variance above guidelines. Mr. Weaver's sentencing guidelines were 70 to 87 months. The court gave him a 144-month sentence, and while the district court judge, Chief Judge Brady, certainly in every case, but certainly in this case also, was very familiar with all of the facts of the case. She was familiar with all of the facts contained in the pre-sentence investigation report. She considered those facts, but when she articulated her sentence, she failed to adequately provide a justification to support the above-guideline range. And again, I appear before her often, and she almost always starts her argument part of the sentencing by saying, here are the things that I'm concerned about. So, she's very upfront with both defense counsel and with prosecutor, telling us, you know, I find these things aggravating. In this case, it was Mr. Weaver had some disturbing criminal history. She talked about all of those things are part of a discussion that is had prior to the imposition of sentence. That's it. You're making it. Can I pause you on that real quick?  We're going to give you time. Is that a – and she, at least in this transcript, she's doing it within the context of the 3553 factors and saying to both parties, defense counsel and the government alike, here's what's on my mind, and then counsel proceeds to address those particular concerns. Okay. Right. That's just descriptively what happened. And in almost every case, that is what she's doing. Okay. So, my question is this. I don't read – I know you didn't write the brief, but I don't read Mr. Weaver's brief here to be contending that that reflects some kind of legal error, that that reflects procedural error. No. No. That is not the procedural error. Okay. The procedural error is that at the time that she articulates the reasons for her sentence, that those specific particularly – I struggle with that word, Your Honor – but those specifics are not identified at the time of her sentence to support her sentence. Yeah. So, your point is that, look, 144 months is a big sentence on a 922G felon and possession case. No question about it. Mr. Whalen will agree with that. Right.  Big sentence. And it's substantially above even the high end of the guideline range. And the argument you're making is it's procedurally deficient because it's not explained adequately, in your view, when it's imposed. That's correct, Judge. Okay. That is – and I think that Lockwood governs in this case, it controls in this case, because if a court is going to go deviate above the guidelines and substantially deviate above the guidelines, as Chief Judge Brady did in this case, then there has to be a compelling reason articulated for that substantial deviation. And – sorry, I thought you were going to say something. And in this case, again, while it's clear from the record that she considered those things, you know, his criminal history, they were aggravating facts. There's no question that the facts were horribly aggravating in this case. You know, that Mr. Weber had some disturbing criminal history, that he had a history with gun violence that, you know, at the young age of 19, we just were befuddled by the amount of violence that has surrounded this young man. But at the time that Judge Brady, Chief Judge Brady, articulated the basis for her sentence, she gave three reasons. She said, you know, acknowledging that her sentence was above the guideline range, she said it is a just sentence, that it affords adequate deterrence to Mr. Weber, who needed deterrence in his life, and that most importantly, that it protects the public from Mr. Weber, because at that point the public obviously needed to be protected from Mr. Weber. Those three general sentencing standards are not adequate to support the 144-month sentence that she imposed. Okay, so I think here's the question I have. I'm looking right at the transcript, right at what you just said is completely accurate. But don't we have to read it against the backdrop of everything that surrounds it? And that's in part why I asked you about Judge Brady's initial comments. In other words, she went on at some length and in some detail about why this particular offense conduct was so troubling. You know, what he was doing with the gun, walked into a CVS, all that stuff. And then also emphasized the trend line of his criminal history as well. So when we read the lines that you just focused on that accompany the announcement of the 144-month sentence, a lot of the content of the reasoning comes from what preceded it, does it not? Absolutely it does, Judge. But unless you have this transcript, you know, if you look at the judgment of conviction, if you looked at the findings to support the judgment, those items, those things that she considered, the aggravating nature of his conduct at the time that this was committed, you know, his history with gun violence, those things are not part of the actual judgment to support the 144 months. But if we look at the whole transcript, there's some criminal history that she articulates that is somewhat concerning, and that's unlawful possession of a firearm by a dangerous person, which involves shooting, and domestic battery. Those are all criminal convictions that occurred a year before this incident. And it was the unlawful possession of a firearm as well as the domestic battery that did not count. And she articulated that that's two of the convictions that were concerning, and they did not count toward the criminal history category. Would that not support this affords adequate deterrence to further criminal conduct, suggesting that you've been convicted for negligently handling firearms, and she said in violent encounters. Since age 12, there has been violence in your history. Nothing has deterred you from continuing down this path. Those things absolutely would support, I think, part, you know, would be a basis for her reason for giving the 144-month sentence, or whatever the sentence might be. Those are relevant factors. Those are important factors. And it was appropriate for her to consider those things and to articulate those things. However, those are not adequately identified as the basis for the deviation so far above the high end of the guidelines. And by not articulating that, it creates this disparity in sentencing between, you know, when we look at the JSON numbers, and, you know, we look at like persons and like situations. And obviously, there are no two crimes that are ever committed that are the same. There are no two offenders who are ever, you know, same criminal history category, but how we get there are totally different. So, those things are not articulated appropriately in order to justify the 144-month sentence that she imposed. So, we would ask that the court vacate that sentence and remand it for a re-hearing, a sentencing hearing, so that those things can be addressed appropriately by Chief Judge Brady. Okay, very well. Thank you.  Please, the court. Nathaniel Whalen here on behalf of the United States of America. The district court did not procedurally err in imposing its sentence, and its sentence was substantively reasonable. So, we ask that this court affirm. As I understand the argument today, defense is now conceiving, I think appropriately, that the discussion on pages 13 through 15 of the sentencing transcript, kind of the pre-argument phase, are part of the 3553A analysis. And I don't think there's really any other way to read this transcript, because the court talks about it in terms of nature and characteristics of the offense. The defendant's criminal history talks about, even references 3553A during those pages of the sentencing. And so, that is part of the court's analysis of the 3553A factors. And the court, I think it's a procedure that defense counsel should prefer, because it allows defense counsel and the government to address the court's, you know, weighing of the factors and considerations of the facts. And so, if you look at that discussion, and then the court comes back to that on pages 39 and 40, which is when it does the actual technical imposition of the assentence. The court talks about the mitigation in the middle of page 39. And then, it doesn't just talk about the factors that Mr. Weaver's identified. The court also talks about his criminal history, which, as Judge Pryor noted, the court had extensively gone through, and which is not necessarily reflected in the PSR. You know, the fact that it involves violent gun instances. The fact that he has some criminal history convictions that don't score points. The rapidity, the nature with which he re-offends time and again, quickly, one after another. None of that's accounted for in the guidelines. And so, the court's appropriately considering those factors. The court's considering the fact that they involve guns. And he has this incident where he recklessly kills his best friend by handling a firearm. Says this stunts him for life. And the court rightly asks, how can you then pick up the firearm the way that you did in this video? It's not only that, but he's surrounding himself. He's in a gang. It's uncontested that he's in a gang. He withdrew his objection to the PSR, disputing that fact. He's the target of drive-by shootings that causes his grandmother to get killed. It causes his mother's car to get lit up with bullets. These are the facts the court identified as the defendant's criminal history. And then, continuing on page 39, the court talks about the offense context's aggravating factor. The court had already discussed that extensively on pages 13 through 15, where it talks about how, you know, he's driving through a populated area in Fort Wayne, well high, bragging on Instagram about the fact that he's high. And then, he shoots twice out the window. And there's the third time that's not even captured on video, where he previously shot out the window. He goes into the CVS. He's handling the gun. He's posing with the gun. If you watch the video on the CVS, at one point, he puts the camera down, and he's kind of acting like a model almost with the gun for anyone who's in that CVS to see. The court identified those factors as aggravating. And the court even says, the court has considered, which I've discussed, the offense context as an aggravating factor. So, to the extent that this court's looking for any confirmation that the district court is reincorporating that prior discussion, that's where it is. Everyone knew what was going on, but the court right there says, I've already discussed these factors. I'm incorporating them again. Then, the court talks about the significant risk to the public by firing rounds in the air. Talks about his gang affiliation. Talks about the PSR. Talks about the guidelines. Talks about the aggravating and mitigating circumstances. This court, this isn't like Lockwood, where we have a single page of transcript, where the court doesn't identify defendant-specific factors that justify the sentence. This court gave a very detailed and defendant-specific analysis of why it imposed the sentence that it did. Yes, it's high. I agree with that absolutely, Judge Scudder. It's a high sentence for a felon in a possession case. But Mr. Weaver earned the sentence. He earned it with his offense conduct. He earned it with his criminal history. And whether it's the sentence maybe I would give or maybe your honors would give isn't the question on the substantive reasonableness. It's whether it's within the court's wide discretion. And this was within the court's wide discretion based on Mr. Weaver's offense conduct, his personal history, the risk to the public, and all the other 3553A factors the court discussed in great detail. So unless this court has any further questions or any questions, we would ask that you affirm the sentence. Okay. Very well. Thank you. Ms. Dwellin, thanks to you. Ms. Crouch, yeah, you're welcome to give rebuttal. Just very briefly, Judge. Thank you. Judge, so the district court noted that the sentence was above the guideline range but offered little in justifying how far above that she went. All of the, again, the judge, Chief Judge Brady discussed and considered all the appropriate, everything she considered was appropriate. I'm not just in any disagreement with what she considered and how she did it. However, if a court is, if there's a variance, especially a significant one, it must be carefully explained. And that is the problem with the judgment in this case is that how she reached the decision that she reached, the 144 months. You know, it's a six-level. The thing about Chief Judge Brady is she very rarely ties her sentences to the guidelines. We talk about them. We talk about procedurally what his offense level is, what his criminal history is. We talk about what his guideline range is. And then we stop talking about the guidelines when it comes to sentencing and we start talking about the 3553A factors, which is those that are going to be specific to this specific client. So how she reached the 144-month sentence, which, you know, you have to go look at the guidelines to see that it is a six-level upward variance from where he was. And there's no explanation in the record to justify that sentence. And that's everything I have. Judge, thank you. You're quite welcome. Ms. Cross, thanks to you. Mr. Whalen, thanks to you. We'll take the appeal under advisement.